Good morning. Let me specifically say thank you for letting me take presence. I do have to be there at 1 and very much appreciate it. This case brings to our focus, and if I first let me just reserve a minute for rebuttal, this case brings to our attention sort of the question that perhaps the justices, I figured what's the best argument here, we all know the facts, the district court did find that the person had appealed. The district court is a factual finding that has not been disturbed or appealed, or cross-appealed. The district court also found that the insurance carrier opened an appeal file and followed one more step or two more steps in that appeal file by actually sending the administrative record and then interestingly for an insurance company who's an expert in that field of insurance and appeals and has a fiduciary duty to the person to administer the appeals and to do so in a full and fair way, was absolutely silent. No letter, no call, no nothing. They knew how to call because they called when they denied the claim. They knew how to write because they wrote when they denied the claim. They sent the information and the communication when it was appropriate to do so. When it was in their own interest and contrary to a full and fair hearing or contrary to notions of fair play, especially in the context of someone who was injured, in pain, and not familiar with this court, law, insurance, appeals, the technical criteria of ERISA, etc., etc., etc., was not familiar with any of those parameters, but instead was the distant person seeking benefits from the administrator in the context of an appeal. That is the format that we find ourselves to. I thought to myself, what's the best argument here? Perhaps it's this one. This court probably many times reads the briefs, reviews the record, has the discussion, and thinks, all of the counsel missed the point in this case. The real issue in this case is over here, and nobody briefed it, but we're going to because that's how we see it as the reviewing court. I'm sure that occurs. Did she consult a lawyer and one she represented? The record was never resolved on that matter, Your Honor. The fact is that if she would have consulted a lawyer who, like I was listening to next door here, was somebody who had a securities background or a mortgage lending background, wouldn't have done much good in that setting. I don't think the lawyer for the claimant that we have no really insight into the record or in the record for, I don't think that should relieve the carrier of its obligations both under ERISA and as an insurance company and doing business in all 50 states of this country when someone has made the request. So I think the main point here is what this person was asking for and what an administrative review requires, different from, of course, your review, but with that same notion in mind. What it requires is that another set of eyes look at this record. She stood on this record, but another set of eyes look at it and say, is it right? Do these restrictions apply or don't they? She says she can't do it, and she says the decision's wrong. Let us take a look, and every one of these companies, as we all know from all the cases the Ninth Circuit's reviewed. So your client did what she thought she had to do and then was waiting to hear back. Yes, Your Honor. So she wasn't going to sue. She was waiting to hear the results of her internal appeal. And eight months or so went by. Instead, did the insurance company sue or she ended up suing? She had to, yeah. Because she never heard anything? Nothing. She got the denial. She thought she had appealed. Not a call, not a letter, nothing. Okay. So I suggest to you that once we've gotten over the threshold criteria of the appeal, which is actually undisturbed below, that at that point the burden of going forward, there is no burden of going forward. You can stand on the record. You don't have to. For example, one of the things in the letter that it said is go out and find us the relevant test documents, the relevant vocational information, all those kinds of things. She's not qualified to do that. She already submitted that anyway. I'm sorry? She already submitted it. She put it forth. She already submitted that and it already had an individual independent medical evaluation. That's right. And she was looking for a review set of eyes to do it, and unfortunately the carrier failed her. The company loses nothing for this court to say, go back. What should the company have done? They should have done exactly the same thing that they did to advance the appeal. They should have called her. They should have corresponded with her, and they should have told her, if you don't, now that we have appealed and we've set up our file and we've sent you the file, you have said you wanted to do something further. If you do, do it. If you don't, we're going to disconsider your appeal as it is stated and decide it, which, frankly, courts would do the same thing. So in the December letter it says, under normal circumstances, you will be notified in writing of the final decision within 60 days from the date your request for review was received. Did that ever happen? No. So I think it leaves us with the setting where once we've stepped through the door, a whole number of things happen that should be the province of the carrier, and unfortunately the carrier failed her in that setting in the ERISA context, and here we don't ask for sanction beyond allowing that process to go back and occur. Well, did she really fail to take care of requirements that the letter sent to her told her that she had to do? The requirements, as you saw briefed both by myself and my counsel on the other side, were all couched in that letter in the May context, where the one thing that was couched in the must, and we briefed it for you already, was you must file the appeal within the time she did that. They acknowledged it. They opened their file. They sent her the administrative record. There's no question that she walked through that door. There's no question about that in this case on the record. The question is what else should, if she wanted to, should she have done? Frankly, it was very easy for the carrier to have just sent the letter and said, we can't just sit here all this time. If you want us to proceed, we will. If you want us to close the file, we will. Tell us what to do. Or, having not heard from you, we have gone through the appeal, and here's the result. And that then triggered the time for her to have brought the action to district court. So that having failed to occur, I believe that's really, you know, the bright light focuses into that time period where that system just failed her. And, again, our request here is not to punish the company in any way, but to reestablish that appeal. If I have, I'm basically done. I think the most important point I wanted to make was many times I think the court itself is sometimes faced with that. Thank you. Thank you, Your Honor. Get on your way to Riverside. Counsel, does that say your name? Certainly. My name is Susan Handelman, and I'm appearing on behalf of the benefit administrator here at Liberty Life. It seems to me it was the insurance company that dropped the ball, not Mrs. Halstead. Yeah, and, you know, I listened to my opposing counsel, and I think it's really important that we set the record straight on that. My opinion has nothing to do really with all due respect with the argument. It's having reviewed the record and what the letter said and the kind of changing and ambiguous request the insurance company was making of Mrs. Halstead and the fact they acknowledged that she had appealed and they already had lots of records in her independent medical examination, and they opened their file, they believed there was an appeal, and then they did nothing. But here the insurance company clearly set forth in its October 19th letter, the plan administrator said, if you want to, you have the ability to avail yourself of the internal review process, and if you do that, you must notify us within 180 days and tell us what is the basis of the difficulty that you have with this decision. Now, that's in the October 19th letter, and that's well within the ERISA regulations. Okay, so she says that in October, you say that in October 19th, and then she responds in December 3. Well, then there was a phone call. In response to your letter dated October 19, I'm writing to notify you that I intend to appeal the claim. But before? And I request my claim file. No, the letter says, I intend to appeal, but before I can appeal, I would like a copy of my claim file, entire complete claim file. All right. So then you write back December 10, we have received your request for review of the recent claims, and I believe you have other internal records that say here on 1210, your internal records say Peterson Chapman. Sorry, wrong one. That's right. Claimant is in her appeal notification request for a copy of her file, sent copy of claim file. So you treated her, your client treated her December 3, both internally and externally, as her statement of appeal. The claim note says, appeal slash request for claim file. The claim note does say that. No question about that. The letter that went to the insured with her claim file, or with the claimant with her claim file. Can I proceed? Sure. Would you like me to wait for the kids to come in? I see that. This is a wonderful thing. We're glad to see all these young lawyers. They heard you were here. It's terrific. The point that I wanted to make, Your Honor, is that in the letter. We'll wait. We'll wait until they come in. Why don't some of the children come down more to the front so you can see? These are all in the back behind the lawyers. You can come in the front. You don't have to sit all in the back. As a matter of fact, some of you can come up and sit with the lawyers and give them advice. That's it. I could use some help. All right. Okay. Getting back to the letter, when the plan administrator sent or the internal person from the plan sent the claim file, it essentially says, here's your file. Please let us know what your problem is, essentially, with the denial. That's what the letter says on December 10th. Now, far from a situation where the claimant asked the plan for some action and the plan didn't do anything, excuse me, this is a situation where the claimant said, I plan to appeal, but first I need my claim file. The claim file was sent and said, again, please tell us what your problem is with our denial. Because the denial under ERISA. Denial. The problem was the denial. Her doctor said she had plenty of problems, and your consultants who had never seen her said she didn't. That was the problem. Her doctor, this is something that we have to be very careful about, because by the time the consultant had seen the records, before the claimant asked for her file, her doctor said she was ready to return to work on a basis that was not strenuous. But he did say, this is Dr. Dennis, said that she was able to return to work. And to respond to a question, and again, I think we've got the chronology wrong here. But now you're talking about the merits of it. And the problem that I have with this is that Judge Carter dismissed it before her claim could be tested for any validity at all. Appreciate it. However, the court doesn't even have jurisdiction under ERISA unless there's been an exhaustion of administrative remedies. And here, this is why it has to be treated with such respect, this whole ERISA framework, which has as its purpose to maximize the benefits that are available to claimants and to increase communication between the claimant and the plan. And if you will see in review of the record, there was communication. She was warned that her definition of disability was going to be changing. She came in for an IME. There were communications all about that. When the denial letter for the own occupation type benefit went out, there was telephone conversations about what the appeal process is. And we have a letter, a single letter, one letter from the claimant that says, I intend to appeal. But first, I must have a copy of my claim file. That's the only communication that comes in from that side. Now, ERISA requires the parties, it functions by a meaningful dialogue. The plan has to have a dialogue with the claimant and the claimant in return. And the ERISA regulations say that the plan must allow for a full and fair review of a plan or of a denial of a benefit. And the plan and the administrator has a fiduciary obligation to set up a system that will further, through communications back and forth, provide this meaningful review. Meaningful review, ERISA requires the plan to set forth in detail all of the reasons for the denial. In order for there to be any meaningful review, there has to be a dialogue from the insured that says, what's wrong? She could have said, I want you to review it based on what you've got. She could have said, I have nothing to add. But in fact, and this is a question that came up earlier that is very important, during the 180-day period that she had in order to perfect her appeal, the claimant did go out and get a lawyer. That's in the record at S.E.R. 599. She was on February 3rd in contact with an attorney. And at that time, the attorney went to or had the claimant see or the claimant saw without the attorney asking her to, a doctor. And there was a new medical report in February. During the time that was available for the employee and the plan to get together and talk about whether this denial was right or wrong. Well, a claimant doesn't have to avail themselves of an administrative review process. But it's a prerequisite to suit because ERISA contemplates that there will be some review, dialogue, what's wrong, what can be done. It can be an arbitration, which isn't in the ERISA regs but is perfectly fine under CHPL. It can be an internal appeal process as this was. But there's no communication here. There's one letter from the insured that says, I intend to appeal, but before I can appeal, I want my claim file. That's it. We called her and we wrote to her and we got nothing. What about the phone conversation in your file that says that... We discussed the appeal. No, she says, no, no, no, this is the other one. It says she stated that she plans on hiring an attorney to assist with her appeal, which sounds like it's existing. And then it says we discussed why her claim was denied. Correct. And it says any occupation, which means that, you know, which is obviously the reason you denied her claim, right, that she was now on to a new stage, a new standard of disability, where she had to demonstrate that she had the ability to work in any job, not just the job she had held before. Right? What's right in your file? Well, I suppose I'm having trouble seeing Your Honor's point here because the way that file note reads to me is that the denial notice was sent on December 19, and on November 3, before she sent us anything, we're on the phone with the claimant explaining the appeal process, just what ERISA calls for, an interactive dialogue. We're available 24-7. Maybe not 24-7, but we're available, and our notes indicate that we receive calls and send calls back, and we talk to her about her claim, and we talk to her about the appeal process. She says, I'm going to hire a lawyer, and I'm going to appeal. So what does she do? She sends us a letter after that phone call that says, I intend to appeal, but before I can do that, I want my claim file. We send the claim file and say, and I agree, the claim note says, appeal slash request for claim file. We send the claim file and say, in the letter on December 10, please tell us what is wrong with our denial. You know, the plan administrators are faulted for coming up with some reasons in appeal letters that were not included in their original denial. The original denial is supposed to be thoughtful and thorough and understandable and in plain English, and there's no indication here that the insured misunderstood anything about the denial, or there's no indication that she had any issues with it whatsoever. How has the insured facilitated a review, a full and fair review that is mandated by ERISA? It's just not there. So what we have here, instead of an insurance company that dropped the ball, we have a claimant who hasn't participated and cannot be said to have exhausted her administrative remedies. This is required in order to file suit as a method to keep down frivolous lawsuits and lawsuits at all. The point is that ERISA mandates that the claimant and the plan try to work things out, and I don't see any lack of trying on the part of the carrier. I see the carrier, the plan administrator responding to the claimant. I see the claimant getting their file right away. I see the claimant being asked, tell us where we can communicate, and we get nothing except a statement of future intent to appeal. Now, whether that's viewed as never having appealed in the first place or whether that's viewed as a failure to perfect an appeal, it's a failure to exhaust administrative remedies that is required by ERISA in order to go forward with a lawsuit in court. It's not a game. Who drafted this plan? Well, the plan is a Fujitsu plan, but it's insured, and the benefit plan is insured by a policy from Liberty Life, and Liberty Life is a... And who drafted the plan? Did the employees draft the plan? No, no. There wasn't a union here, was there? No. So it's the employer that drafted the plan. Yeah, and under ERISA, there are very stern requirements on that, and under ERISA, under the regulations 29 CFR 2650.503-1G, the general outlines are mandated by ERISA, but it is up to the plan administrator to communicate reasonable procedures for effectuating this full and fair review, and as I say, it can be... Did they ever call her in and say, come into the office and let's sit down and go over this? No. This is what you have to do? No, they did interact with her. They asked her to go see a doctor, which she did. But most of this communication was on the phone, huh? Phone and by letter, yes. By letter. Yes, in writing. No, this is complicated stuff. It is. So wouldn't it have been better if they called her in and come on in and make an appointment and have some nice person go through it, say this is what the plan calls for, this is what you have to do, these are the deadlines, if you miss these deadlines, you're going to maybe forfeit your benefits and all that. I am sure that interpersonal communications are important, and I think they're evident in this file. I think probably ERISA... Well, they have phone calls. Phone conversations. But also, Your Honor, and this is important, that ERISA mandates written communications because they have to be clear, and there is nothing less clear than people's hindsight and even present sight of what is being communicated orally. So a writing is probably the clearest way to communicate, and we can look at it after the fact and see whether there was clarity here or not. Now, there was no... You could bring them in and explain all this to them and say, you know, here's a summary of what we talked about. Importantly, in this case, there has never been, not once, not since day one of this claim, ever any claim by my opponent or by the claimant that there was any unclarity or ambiguity or that they relied to their detriment on anything we said or did. There's no claim of estoppel, the judge made that point. There's no claim of waiver, the judge made that point. And there's no claim of there being any ambiguity. She knew what she had to do. So the plan administrator was Liberty Mutual, which is also the person who'd have to pay the benefits? Correct. Okay. Okay. Well, we've given you an extra six minutes and seven seconds. I appreciate that very much, Your Honors. And I appreciate your consideration. It was a good-spirited argument.
judges: Pregerson, Wardlaw, Archer